IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GERALDINE CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:06-CV-340-WC |
| ) | |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

The plaintiff applied twice for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, alleging that she was unable to work because of a disability. Her application was denied both times at the initial administrative level. Each time, the plaintiff requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the United States Magistrate

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Judge (Docs. #21-22, filed January 19, 2007).   Based on its review of the record and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ISSUES

*A. Introduction*

The plaintiff was fifty-one years old at the time of the hearing before the ALJ and has

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

a high school education. The plaintiff's prior work experience includes work as a laundry presser. Following the administrative hearing, the ALJ concluded that the plaintiff had the severe impairments of non-insulin dependent diabetes mellitus and schizoaffective disorder. The ALJ nonetheless concluded that the plaintiff was not disabled, because she retained the residual functional capacity to perform work as a production worker, cafeteria attendant, or machine tending operator.

### B. *Plaintiff's Claims*

The plaintiff presents seven issues for review: (1) whether the ALJ improperly relied on the testimony of a psychological expert, (2) whether the ALJ improperly discounted the opinions of two treating psychiatrists, (3) whether the ALJ improperly required that the plaintiff be "debilitated" in order to be disabled, (4) whether the ALJ improperly relied on the finding of the previous ALJ, (5) whether the ALJ improperly ignored an earlier finding of a state probate court, (6) whether the ALJ improperly failed to state how much weight she gave to the opinion of a consulting physician, and (7) whether the ALJ improperly questioned a vocational expert.

## IV. DISCUSSION

### A. *Opinion of the Medical Expert*

At the hearing, the ALJ called a psychological expert, Dr. Doug McKeown (Tr. 351-

55), and the ALJ gave substantial weight to Dr. McKeown's testimony regarding the plaintiff's functional limitations (Tr. 22), which included a mild impairment of her ability to perform simple tasks and a "mild to moderate" impairment of her ability to maintain concentration, persistence, or pace (Tr. 352-53).  The plaintiff objects, stating that "[t]he only evidence in the record arguably providing any support for Dr. McKeown's opinion...was the January 2002 report by [examining psychologist] Dr. Glenn King, *prior* to her alleged onset of disability, and [examining psychologist] Dr. Brantley's December 2003 report," and objecting to both reports (Doc. #16, filed Oct. 19, 2006, p. 5-7, 11).

The plaintiff's contention that Dr. McKeown relied only on the reports of Dr. King and Dr. Brantley is incorrect.  Dr. McKeown explicitly cited the progress notes from the plaintiff's treatment in 2005 (Tr. 352), and other treatment records, which showed psychiatric interventions "only every three months," a "good response to medication," and auditory hallucinations well controlled with medication (Tr. 353).  Independent review of the record supports these findings (Tr. 159-63).

The plaintiff objects to Dr. McKeown's reliance on Dr. King's opinion (Tr. 504-06) because it was dated January 4, 2002, whereas her alleged date of onset is June 17, 2003 (Tr. 68).  However, in this case, the plaintiff's alleged date of onset is not based on any medical event, but on her previous denial of benefits, which she had applied for based on the same impairments (Tr. 44).  *See* 42 U.S.C. § 405(h); 20 C.F.R. § 404.957(c)(1); S.S.R. 94-2(4), 97-4(9), 98-3(6) (plaintiff cannot claim benefits for a previously adjudicated period, and an ALJ

5

can dismiss a claim for benefits in such a period). Dr. King's examination and report occurred well after the plaintiff's alleged date of medical onset, which was May 25, 2001 (Tr. 383). Furthermore, based on the plaintiff's later treatment notes, Dr. McKeown testified that the plaintiff's "symptom pattern" had been "pretty consistent" since the reports of Drs. King and Brantley, (Tr. 353), so that these reports were relevant to the plaintiff's condition at the time of the hearing.

The plaintiff objects to Dr. McKeown's reading of Dr. Brantley's report. Dr. McKeown testified that, "[Dr. Brantley]...was of the opinion that she had a [schizoaffective] disorder...His indication was that she was stable and doing well at that time and indicated primarily mild impairment" (Tr. 351-52). The plaintiff argues that this is a misinterpretation of what Dr. Brantley said, but independent review supports Dr. McKeown's reading. Dr. Brantley described the plaintiff's disorder as having "no psychotic features" and mood features "in partial remission" (Tr. 132-33). Dr. Brantley also wrote that she was able to live alone and meet her own needs, and that she had "no moderate or marked depression or anxiety" (Tr. 133-34), though the primary feature of her schizoaffective disorder was a residual depressed mood (Tr. 134; *see also* Tr. 159-63). If depression was the primary feature of her disorder, and it was not moderate or marked, a fair reading of Dr. Brantley's report is that the impairment was mild; and the court will not overturn Dr. McKeown's interpretation of Dr. Brantley's report without more. The decision of the ALJ is not due to be reversed on this ground.

*B. Opinion of Treating Psychiatrists*

The plaintiff argues that the ALJ improperly discounted the opinions of two treating psychiatrists (Doc. #16, filed Oct. 19, 2006, p. 7-10). Under 42 C.F.R. § 404.1527(d)(2), the opinion of a treating physician is due extra deference, because a treating professional is best able to provide a "detailed, longitudinal picture" of a claimant's medical impairments. An ALJ may discount the opinion of a treating physician only for good cause. Good cause exists if the treating physician's opinion is unsupported by objective medical evidence or is merely conclusory, *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); or if the record supports a contrary conclusion, *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). The ALJ must articulate explicit and adequate reasons for discounting the opinion of a treating physician. *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir. 1991).

In this case, the opinions in question are multiple-choice[4] "supplemental questionnaires as to residual functional capacity" on which the psychiatrists found that the plaintiff had "moderately severe" impairments in the ability to relate to other people, activities of daily living, personal habits, understanding and carrying out instructions, responding appropriately to coworkers, and responding to customary work pressures (Tr. 175-76, Doc. #16, filed Oct. 19, 2006, p. 19-20). Each form included a question about

---

[4] The forms are identical and instruct the physicians to provide "narrative reports," which these forms are meant to supplement, but no such reports appear in the record. An ALJ can reject conclusory opinions by treating physicians, *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *see also Lewis v. Apfel*, 2000 WL 207018 at *7 (S.D. Ala. 2000), but in this case the ALJ did not reject the opinions on that basis.

medication side effects. One physician wrote that there were "none currently" (Tr. 176) and the other (a year earlier) wrote, "Common effects of psychotropic medications include sedation and feelings of lethargy. Ms. Caldwell suffers from both" (Doc. #16, filed Oct. 19, 2006, p. 20). The ALJ wrote as follows:

> I reject the Residual Functional Capacities assessments provided by Dr. Livingston on March 3, 2004, and Dr. Becerra, on May 31, 2005. These assessments are inconsistent with their own treatment notes which reflect that her anti-depressant was discontinued and on May 17, 2005, she reported that she felt the medication had been helpful and her mood had improved and she did not hear voices anymore...

(Tr. 22).

The record does not show that either Dr. Livingston or Dr. Becerra established a treating relationship sufficient to trigger the requirements of 42 C.F.R. § 404.1527(d)(2). The plaintiff testified that both doctors saw her "every six months" at the South Central Alabama Mental Health Center, and that she had been seeing both of them for "maybe six months" (Tr. 339, 347).[5]  Independent review of the record shows only one month of treatment at the Mental Health Center in the six months preceding the hearing (Tr. 159-74), and only one record signed by Dr. Becerra (Tr. 159). Independent review does not reveal any treatment record signed by Dr. Mark Livingston, either in the six-month period preceding the hearing or in the records preceding March 3, 2004, when Dr. Livingston signed his evaluation (the ALJ also noted the lack of treatment records from Dr. Livingston, Tr. 345). A treating physician who has not seen a claimant "a number of times and long enough to

---

[5] In response to a leading question from her attorney, the plaintiff agreed that they "alternated."

have obtained a longitudinal picture" of the claimant's impairments is due no more deference than a nontreating physician. *See* 42 C.F.R. § 404.1527(d)(2)(i); *Heppell-Libsqansky v. Commissioner*, 170 Fed. Appx. 693, 698 (11th Cir. Mar. 14, 2006); *Patterson v. Chater*, 983 F. Supp. 1410, 1414-15 (M.D. Fla. 1997); *see also Listing of Impairments* 12.00D1c2 (requiring "longitudinal" evidence "over a sufficiently long period" for establishing mental impairments).

Furthermore, according to the one note from Dr. Becerra (which the ALJ specifically cited, Tr. 17, 20), the plaintiff was making "excellent" progress towards treatment goals, her mental status indicators were all normal (her behavior was "normal," her affect was "appropriate," her mood was "level," etc.), she was only taking one medication (Risperdal), and she felt the medication was helpful "as her mood [had] improved [and] she [did] not hear voices any more" (Tr. 159, 352-54).   The record as a whole, as interpreted by the medical expert, supported a finding of less severe impairments than those listed by Drs. Livingston and Becerra (Tr. 351-55).  An ALJ is "free to reject the opinion of any physician when the record supports a contrary conclusion," *Freeman v. Barnhart*, 2007 WL 861140 at *2 (11th Cir. Mar. 23 2007), *citing Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).  This is especially true when, as here, the opinion is not consistent with the physician's own treating notes, *Freeman*, 2007 WL 861140 at *2, *citing Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Fuller v. Massanari*, 2001 WL 530425 at *2-3 (S.D. Ala. May 11, 2001) (opinion of a psychological expert could be accepted over that of two

examining psychiatrists, when "[one psychiatrist's] conclusions [were] inconsistent with his observations and [the other] provided no supporting medical evidence at all," even though the second psychiatrist was allegedly a treating source). The decision of the ALJ is not due to be reversed on this ground.

### C. *Standard for Disability*

In discounting the opinions of Drs. Livingston and Becerra, the ALJ wrote, "Although I do not deny that the claimant has hypertension, diabetes mellitus and schizoaffective disorder, there is no reason to suppose, based on the above findings, that the claimant is debilitated by these impairments." The plaintiff asserts that the ALJ wrongly required that a plaintiff be "debilitated" in order to be disabled (Doc. #16, filed Oct. 19, 2006, p. 4, 5, 11). This argument lacks merit. The word "debilitated" means "showing impairment of energy or strength; enfeebled" (*The American Heritage Dictionary of the English Language*, 4th ed., 2000) and is not a poor synonym for "impaired." Elsewhere in her opinion, the ALJ gave the correct standard for disability (Tr. 15), and discussed at length why the plaintiff's impairments did not render her incapable of working (Tr. 21-22). With respect to the plaintiff's psychological impairments (which were the plaintiff's primary complaints), the ALJ employed an expert who assessed her limitations in accordance with the recognized standards of 20 C.F.R. § 404.1520a and Listing 12.00C of the *Listing of Impairments*. In finding that the plaintiff could work, the ALJ employed a vocational expert who used the psychological expert's findings to determine that the plaintiff could perform jobs existing in

substantial numbers in the national and regional economy, as required by 20 C.F.R. §§ 1520(g)(1) and 1562(c)(1).  The plaintiff has provided no evidence that the ALJ used incorrect standards in assessing her impairments.  The decision of the ALJ is not due to be reversed on this ground.

**D.  *Opinion of the First ALJ***

The ALJ found that the plaintiff had the residual functional capacity set forth by Dr. McKeown in his testimony.  After finding this, the ALJ wrote that she "full[y] accepted [the previous ALJ's] decision dated June 2003..."  The plaintiff complains that "[i]t is unclear why the ALJ relied upon a prior administrative decision which related to a period prior to June 2003" (Doc. #16, filed Oct. 19, 2006, p. 9).  However, as noted above, June 2003 has no medical significance with respect to this plaintiff.  The plaintiff's decision to file for benefits again based on the same impairments does not forestall the ALJ from reexamining evidence from the earlier parts of the record, nor from agreeing with a previous ALJ about that evidence.[6]  *See* 20 C.F.R. § 404.1512(b)(5) (prior decision by any governmental agency as to whether a person is blind or disabled is acceptable as evidence in a Social Security case).  In the current case, the earlier evidence was particularly relevant in light of Dr. McKeown's opinion that the plaintiff's pattern of symptoms had been "largely constant"

---

[6] Of course, the ALJ cannot ignore later evidence, or adopt an earlier finding without more evidence if material facts have changed. *See Kind v. Barnhart*, 130 Fed. Appx. 99, 101 (9th Cir. Mar. 22, 2005).  In this case, however, the ALJ did nothing of the kind.

since the report of Dr. King in 2002 (Tr. 353). Furthermore, as shown above, the record adequately supported Dr. McKeown's opinion of the plaintiff's impairments, quite independently of the findings of the earlier ALJ as to the earlier adjudicated period. The decision of the ALJ is not due to be reversed on this ground.

### E. Opinion of a State Probate Court

The plaintiff argues that the ALJ should have stated what weight he gave to the involuntary psychiatric commitment of the plaintiff by a state probate court in August 2001 (Tr. 406-08) (Doc. #16, filed October 19, 2006, p. 8-9), citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1985). However, *Cowart* requires only that the ALJ explain the weight she has given to "obviously probative exhibits" as part of her duty to develop the record; and a failure to develop the record is reversible error only if the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *see also McCray v. Massanari*, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001). Here the opinion of the state probate court is not clearly probative as to whether the plaintiff was disabled at the time of the hearing. Furthermore, the psychological expert consulted by the ALJ examined the plaintiff's records from August 2001, the time of the commitment, to the date of the hearing. The expert testified, based on the record, that the plaintiff's condition had improved significantly since then; and the ALJ adopted his findings (Tr. 22, 353). In light of the expert's testimony, the court cannot say that the ALJ's opinion contains an

evidentiary gap with respect to the plaintiff's commitment that results in unfairness or clear prejudice. The decision of the ALJ is not due to be reversed on this ground.

### F. Opinion of a Consulting Physician

The record includes a psychiatric review technique and mental residual functional capacity assessment by Dr. Kenneth Warren, a consulting psychologist (Tr. 136-153), dated January 9, 2004. Dr. Warren assigned the plaintiff light to moderate limitations in all the relevant areas of mental functioning (Tr. 151-52) and concluded that the plaintiff could perform simple work activities, but should be restricted from close contact with the general public, would require breaks every two hours, and would miss one or two days of work per month due to mental health issues (Tr. 153). The ALJ described Dr. Warren's opinion (Tr. 18) and stated that she had considered it under the appropriate regulations (Tr. 21), but did not explicitly state what weight she gave it. The plaintiff argues that this was error (Doc. #16, filed Oct. 19, 2006, p. 10).

The government concedes that the ALJ should have stated what weight she gave to Dr. Kenneth Warren's opinion. 20 C.F.R. § 404.1527(f)(2)(ii); *Vuxta v. Commissioner*, 194 Fed. Appx. 874, 877 (11th Cir. Sept. 8, 2006). However, under the circumstances of this case, the ALJ's error was harmless. As noted by the ALJ, Dr. McKeown's assessment, on which the ALJ relied, included a moderately impaired ability to maintain "concentration in persistence and pace for periods of time up to two hours" (Tr. 20, 22-23, 353). This simply

restates in different words Dr. Warren's requirement that the plaintiff take breaks every two hours. Dr. McKeown and Dr. Warren both agreed that the plaintiff could perform only simple tasks. Two of the three jobs that the ALJ found the plaintiff could perform (machine tender and production assembler) did not require close contact with the general public.[7] With respect to days of work missed, vocational experts normally find that an unskilled worker is not disabled by a condition that causes him to miss less than 25 days of work per year. *See Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1255 (N.D. Ala. 2003); *Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1333 (D. Utah 2006); *Saucedo v. Barnhart*, 2004 WL 2303451 at *6 (D. Utah Oct. 12, 2004). Thus, even if the ALJ had given controlling weight to the opinion of Dr. Warren (as she was by no means required to do), the likelihood that her ultimate finding would have changed is too small to warrant reversal. *See Bell v. Barnhart*, 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006), *citing Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Miller v. Barnhart*, 182 Fed. Appx. 959, 960 (11th Cir. May 31, 2006); *Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. Nov. 3, 2005) (if the ALJ's misapplication of the regulations does not change the ultimate result, the error is harmless).[8] The decision of the

---

[7] The VE testified that 3000 production assembler jobs and 4000 machine tending jobs were available in the local (state) economy (Tr. 359). Either of these jobs, standing alone, therefore exists "in significant numbers" and supports a finding of "not disabled" under 20 C.F.R. §§ 1520(g)(1) and 1562(c)(1). *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993); *Brooks v. Barnhart*, 133 Fed. Appx. 669, 671 (11th Cir. Jun. 1, 2005).

[8] The court further notes that Dr. McKeown's testimony occurred more than eighteen months after the report of Dr. Warren, so that Dr. McKeown had the benefit of the additional records generated during that time (Tr. 159-74, 271, 314-29). As noted by Dr. McKeown, the psychiatric records reported progress and symptoms well controlled by medication during this period (Tr. 159-63, 314, 316, 320, 322, 324, 328, 352). The ALJ thus had ample reason to give Dr. McKeown's opinion more weight than Dr.

ALJ is not due to be reversed on this ground.

## G. Hypothetical Question

In assessing the plaintiff's residual functional capacity, the ALJ consulted a vocational expert (VE). The ALJ asked the VE to assume a hypothetical individual with the limitations expressed in Dr. McKeown's testimony (Tr. 358-59). The VE testified that such a person would have few restrictions beyond an inability to perform complex and varied tasks, and could perform light, unskilled work as a production assembler, cafeteria attendant, or machine tending operator (Tr. 359).[9] The plaintiff objects to the ALJ's hypothetical question on several grounds.[10]

### 1. Borderline Intellectual Functioning

Dr. Brantley's consultative mental examination report includes the following observations: "Cognition is suspected to be in the borderline range" and "Understanding is consistent with Low Average to Mid Range Borderline Intellect" (Tr. 133). The plaintiff

---

Warren's, as she implicitly did, though she should have done so explicitly under 20 C.F.R. § 404.1527(f)(2)(ii).

[9] The VE testified that Dr. McKeown's testimony did not "eliminate much of any kind of work other than complex and varied tasks," and that these jobs were merely "a representative sampling" (Tr. 359).

[10] Plaintiff's counsel raised none of these objections at the hearing, when the ALJ propounded the question. The court will nonetheless consider them. The plaintiff's objections based on Dr. McKeown's reading of the record and the plaintiff's alleged restriction from interacting with the general public have already been discussed (sections III.A, III.F, and n.7, *supra*).

states that the ALJ should have included borderline intellectual functioning in her hypothetical question (Doc. #16, filed Oct. 19, 2006, p. 12).  However, Dr. Brantley did not include this "suspicion" in his diagnostic impression (Tr. 134), and the ALJ was not required to accept it as a limitation.  More importantly, the psychological expert, Dr. McKeown, who reviewed Dr. Brantley's report and relied upon it, assessed a "mild" limitation in the plaintiff's ability to perform simple tasks, and a "moderate" impairment in her ability to perform varied tasks (Tr. 353).  The ALJ included these limitations in her hypothetical question to the VE (Tr. 358-59).  The ALJ was not required to assess additional limitations based on the plaintiff's possibly borderline intellect, or substitute her own judgment as to its effects for that of the psychological expert. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).[11]  The decision of the ALJ is not due to be reversed on this ground.

*2. Restriction Based on Medication Side Effects*

At the hearing, the plaintiff testified that side effects from her medication made her drowsy in the past (Tr. 343).  She then testified that her medications no longer caused her to be drowsy, but that she still "nodded every once in a while" during the day (Tr. 344).  Dr.

---

[11] The court further notes that the listings for Cafeteria Attendant and Production Assembler in the Department of Labor's *Dictionary of Occupational Titles* (listings 311.677-010 and 706.687-010) require only level 2 reasoning, level 1 mathematical, and level 1 language ability, in contrast to her previous job as a laundry presser (listing 363.682-014), which required level 2 reasoning, level 2 mathematical, and level 1 language ability.  Given the presumption that IQ scores (which are the primary measure of "borderline" intellect) remain constant throughout one's adult life (*Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001)), these listings strongly suggest that the plaintiff had the ability to meet the mental requirements of these jobs. *See Street v. Barnhart*, 340 F. Supp. 2d 1289, 1294 (M.D. Ala. 2004).

16

Livingston's opinion from March 3, 2004 (Tr. 19; Doc. #16, filed Oct. 19, 2006, p. 19-20) states that, at that time, the plaintiff suffered from drowsiness.[12]  The plaintiff argues that these facts require a finding that the plaintiff still suffers from drowsiness caused by her medication (Doc. #16, filed Oct. 19, 2006, p. 13-14).  This argument lacks merit.  As noted by the psychological expert, when Dr. Livingston wrote his opinion, the plaintiff was still taking Wellbutrin, but that medication was later discontinued precisely because it caused sedation (Tr. 20, 132, 352, 354).  At the time of the hearing, the plaintiff was taking only Risperdal for her psychological problems (Tr. 159), and according to Dr. Becerra's opinion, dated shortly before the hearing (Tr. 176), the plaintiff's medications were having no effect on her ability to function.  This is in keeping with treatment records from 2002-03, which consistently show "no" medication side effects (Tr. 232, 237-38, 243, 245, 247, 251, 255, 258-59, 263, 265, 267).   The decision of the ALJ is not due to be reversed on this ground.

*3. Restriction on Contact with Fumes and Moving Parts*

On February 6, 2003, the plaintiff underwent a physical examination by Dr. Scott Bell, M.D. (Tr. 523-27).  In his examination notes, Dr. Bell found that the plaintiff had no relevant "visual, communicative, or work place environmental limitations," but in his physical capacities evaluation, he recommended that she only "occasionally" work around

---

[12] Dr. Livingston wrote that "sedation and feeling[s] of lethargy" were "common side effects" of psychotropic medication, without saying whether the plaintiff's drowsiness was actually caused by her medication.

17

"fumes, noxious odors, dust, mists, gases or poor ventilation" or around moving mechanical parts (Tr. 529). The plaintiff argues that the ALJ should have applied these restrictions in her hypothetical question (Doc. #16, filed Oct. 19, 2006, p. 12-13).

The ALJ adopted the findings of the previous ALJ, which included these limitations (Tr. 23, 42), and ought either to have included them in her hypothetical question or justified their omission. However, the ALJ's error was harmless. According to the Department of Labor's *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, listing 706.687-010, the job of production assembler as normally performed in the national economy requires no exposure to moving parts, humidity, atmospheric conditions, toxic or caustic chemicals, or "other environmental conditions." As noted above (*supra* n.7), this job alone was enough to satisfy the requirement that the ALJ identify jobs existing in substantial numbers that the plaintiff could perform. Thus, application of Dr. Bell's limitations would not have been likely to change the result, the ALJ's error was harmless, and the decision of the ALJ is not due to be reversed on this ground.[13]

---

[13] The plaintiff also raises a general objection to the fact that the ALJ did not include physical limitations in her hypothetical question, but only the psychological limitations assessed by Dr. McKeown (Doc. #16, filed Oct. 19, 2006, p. 12). However, as shown above, the specific examples raised by the plaintiff do not demonstrate reversible error. The court also notes that the ALJ selected only jobs with light exertional requirements in deciding what work the plaintiff could perform, though the ALJ did not make a specific finding that the plaintiff was no longer capable of performing medium work.

The ALJ's finding that the plaintiff could no longer perform her past relevant work appears to result from error in the plaintiff's favor. The ALJ wrote that she based this finding on the testimony of the vocational expert (Tr. 23). In fact, the vocational expert testified that a hypothetical person with the limitations listed by Dr. McKeown *could* perform the plaintiff's past relevant work (Tr. 356). With respect to physical requirements, this testimony was consistent with the limitations assessed by Dr. Bell,

## V. CONCLUSION

The court has carefully and independently review the record, and concludes that the decision of the Commissioner is due to be affirmed.  A separate order will issue.

Done this 4th day of April, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

on which the previous ALJ relied in finding that the plaintiff could perform her past relevant work (Tr. 42).